S09A0087, S09X0088. HALL v. TERRELL; and vice versa.

(679 SE2d 17)

HINES, Justice.

Brian Keith Terrell has been tried three times for the murder of seventy-year-old John Watson and for related crimes. The first jury was unable to reach a unanimous verdict in the guilt/innocence phase. The second jury found Terrell guilty and sentenced him to death; however, this Court reversed on direct appeal based on an error in jury selection. *Terrell v. State*, 271 Ga. 783 (523 SE2d 294) (1999). The third jury again found Terrell guilty and again sentenced him to death, and this Court affirmed unanimously. *Terrell v. State*, 276 Ga. 34 (572 SE2d 595) (2002). Terrell filed a petition for a writ of habeas corpus on August 20, 2004, which he amended on December 18, 2006. The habeas court held an evidentiary hearing on May 21, 24, and 25, 2007. In an order filed on July 17, 2008, the habeas court granted Terrell's petition as to his death sentence and denied it as to his convictions. The Warden has appealed in case number S09A0087, and Terrell has cross-appealed in case number S09X0088. In the Warden's appeal, this Court reverses and reinstates Terrell's death sentence. In Terrell's cross-appeal, this Court affirms.

*I. Factual Background*

The evidence at Terrell's last trial suggested the following facts. Terrell's mother was a close friend of the victim, John Watson, and Watson had also been friendly with Terrell. Shortly after being paroled from prison on other charges, Terrell stole ten checks from Watson and began using them, probably with the cooperation of another person. On June 20, 1992, when Watson discovered that his

checks had been stolen and learned that Terrell's name had been signed on some of them, he informed Terrell's mother and summoned a sheriff's deputy. Watson gave a report to the deputy; however, he asked the deputy not to pursue the case yet. Watson then agreed with Terrell's mother not to press charges if Terrell returned a significant portion of the stolen money by the following Monday morning, June 22, 1992.

Terrell and his cousin, Jermaine Johnson, checked into a hotel on Sunday night, June 21, 1992. The next morning, Terrell directed Johnson to drive him to Watson's house. Terrell got out of the automobile at Watson's house carrying a pistol. Johnson drove away, and witnesses observed a person, who matched his description in various ways and who was alone, driving around, at a convenience store, and back at the hotel. Johnson drove back to Watson's house later as Terrell had directed and picked him up along the road in front of the victim's house. Terrell had Johnson open the hood of the automobile to create the appearance that it had broken down. Terrell still had the pistol, and he told Johnson that he had shot someone. Terrell and Johnson then returned to the hotel, checked out, and went shopping for clothes. Terrell then took his son to the zoo, where he disposed of the pistol. When Watson missed his dialysis appointment, a search began for him at his house.

Evidence found at Watson's house after he was discovered missing showed that, during the murder, Terrell hid at the corner of Watson's house waiting for him to come outside to go to his dialysis appointment. Terrell then fired repeatedly at Watson; however, the initial shots all struck the driveway, possibly because Terrell had a defective wrist that caused his hand to point downward when raised. One shot, however, ricocheted up and struck Watson in the back of his thigh. Terrell then reloaded and continued his attack. Terrell overtook Watson, struggled with him, shot him three more times, dragged him across the lawn to a more secluded area, and beat him brutally about the face and head, breaking bones in his jaw, nose, cheek, forehead, and eye socket and knocking out some of his teeth. The beating was so severe that bone penetrated into the victim's brain.

Evidence in the sentencing phase showed that Terrell had previously participated in a home-invasion robbery against drug dealers at an apartment in DeKalb County in 1990. According to Terrell's confession in that case, the robbery involved the use of guns, and the female victims were ordered to strip and were bound in a closet while the male victim was placed underneath a sofa. An automobile was also taken in that crime. An officer with the Newton County Sheriff's Department testified about a separate incident that Terrell had been involved in after his arrest for Watson's murder.

The officer testified that in 1994 in a pre-trial holding cell, Terrell approached him, said that he was going to rape the officer's daughter, and smiled. Testimony also showed that Terrell set a fire at the Newton County Jail in 1994.

## II. Alleged Ineffective Assistance of Trial Counsel

### A. Standard of Review

The Warden argues in his appeal that the habeas court erred in vacating Terrell's death sentence based on a number of specific ineffective assistance of trial counsel claims, and Terrell argues in his cross-appeal that the habeas court erred by not granting relief based on additional specific ineffective assistance of trial counsel claims. To succeed on an ineffective assistance of trial counsel claim, Terrell must show both that his trial counsel rendered constitutionally-deficient performance and that, absent that deficiency, there would have been a reasonable probability of a different verdict. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783-784 (1) (325 SE2d 362) (1985). See also *Rompilla v. Beard*, 545 U. S. 374 (125 SC 2456, 162 LE2d 360) (2005) (applying *Strickland v. Washington*); *Wiggins v. Smith*, 539 U. S. 510 (123 SC 2527, 156 LE2d 471) (2003) (same). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). This Court accepts the habeas court's findings of fact unless they are clearly erroneous; however, this Court applies those facts to the law de novo. *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). In weighing any prejudice Terrell might have suffered at trial, this Court considers the combined prejudicial effects of all of trial counsel's deficiencies. *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007).

### B. Alleged Failure to Disprove that an Armed Robbery Occurred

The habeas court held that trial counsel performed deficiently by failing to disprove that Terrell committed armed robbery against the victim. The habeas court noted that the victim had $1.61 in his right-front pocket after the murder; however, it failed to note that that sum was comprised merely of coins, which Terrell likely was not interested in taking during the rush of the murder. The habeas court also noted that the victim's wallet in his back pocket was undisturbed; however, the evidence at trial showed that the victim was known to carry his cash *separately* in his left-front pocket and that Terrrell, having previously spent a significant amount of time with the victim, would likely have been aware of that fact. After the murder, the victim's left-front pocket was found to be turned out, and the cash he typically carried there was not present. Testimony

showed that Watson had withdrawn $150 from his bank earlier that weekend, and at the time of the murder he was venturing away from his home for his dialysis appointment, which supports a strong inference that he was carrying cash when he was murdered. After the murder, Terrell went shopping for clothes and paid cash. Finally, a long-time acquaintance of Terrell testified for the first time in any of Terrell's three trials that, prior to the murders, Terrell had asked him if he wished to participate in murdering *and* robbing the victim.

Although there were strong indications at trial that the pocket being turned out was due to Terrell's having taken the victim's cash, an investigator admitted under cross-examination by trial counsel that it was impossible for him to testify for certain based on his observations at the crime scene whether the victim had previously had cash in the pocket or whether the victim had removed his keys from the pocket. Trial counsel stated during his closing argument in the sentencing phase that the evidence did not support the prosecutor's argument that the crime had been committed in anger, but, instead, that the evidence suggested that the crime had been committed in a panic, perhaps in response to an intended robbery having gone wrong. However, this argument was simply a speculation as to why some other person might have been at the scene of the murder and not a concession that an armed robbery had been committed.

Terrell presented testimony in the habeas court from another crime scene expert suggesting the possibility that the victim's pocket could have been turned out by the victim removing his keys or by the tugging of vegetation as the victim was dragged. The habeas court found that trial counsel had performed deficiently by failing to present similar expert testimony. However, this testimony was essentially a matter of common sense and, in light of the other evidence at trial, this Court concludes that presentation of such testimony at trial would have had no significant impact on the jury.

In light of the discussion above, this Court concludes that trial counsel did not perform deficiently in the actions they took at trial regarding the issue of armed robbery and that the additional testimony Terrell has presented in the habeas court would not, if presented at trial, in reasonable probability have changed the portion of the jury's verdict finding beyond a reasonable doubt the existence of an armed robbery.

*C. Alleged Failure to Obtain an Independent Expert in Forensic Pathology*

The State presented testimony at trial from a forensic pathologist, Dr. Mark Koponen. Dr. Koponen testified that the victim was first shot and was then beaten severely about the face and head, possibly with the butt of Terrell's pistol. Dr. Koponen further

testified that he was able to conclude that the victim was alive during the beating because the victim had bleeding underneath the membrane covering the brain. The victim's eye socket, cheek, nose, and jaw were broken, his left ear was injured, he had several teeth missing, and the bone beneath his forehead was broken and pushed back into his brain. Dr. Koponen testified that the victim was only possibly conscious during the beating, but that he was definitely alive.

Terrell presented testimony in the habeas court from Dr. Jonathan Arden contradicting the conclusions of Dr. Koponen. Dr. Arden generally criticized Dr. Koponen's autopsy of the victim. More specifically, he contradicted Dr. Koponen's conclusion that the victim was alive during the beating and stated that it was *possible* that the victim had been struck fewer times than the five or six blow minimum asserted by Dr. Koponen, particularly in light of the possibility that the wounds were inflicted by some mechanism other than the pistol, such as by stomping. Dr. Arden testified that photographic evidence of the minimal bleeding from the victim's facial wounds, the lack of aspirated blood, and the presence of only "minute contusions" in the brain tissue all indicated that the victim was deceased before being beaten. He also testified that Dr. Koponen's finding that the victim had bleeding in the subarachnoid space, which is the area underneath the membrane covering the brain, and his finding of bleeding in lacerated brain tissue were inconsistent with his finding that the victim had no bleeding above and below the dura, which is a membrane just below the skull and which was torn as the victim's skull was crushed.

Although he did not note this fact in his trial testimony, Dr. Koponen responded to the criticism of his autopsy findings in the habeas court with the added statement that he found clotted blood in the ventricles of the interior of the victim's brain, which he believed was further evidence that the victim was alive during the beating. He also explained that his findings of only minimal bleeding from the wounds was consistent with the victim having lost much of his blood pressure while still alive. The habeas court emphasized that Dr. Koponen was young and relatively inexperienced when he conducted his autopsy of the victim. However, by the time of his habeas testimony, Dr. Koponen was highly experienced and maintained that his initial findings were correct. Dr. Arden, who could merely review the record for his habeas testimony, stood in no better position to second guess Dr. Koponen's original findings than Dr. Koponen did himself.

Dr. Koponen's testimony that the victim was alive but possibly unconscious supported the following two statutory aggravating circumstances: (1) that the murder was committed while Terrell was

engaged in an aggravated battery and (2) that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, and an aggravated battery[1] to the victim. OCGA § 17-10-30 (b) (2), (7). Had the jury heard testimony like Dr. Arden's, it would have been forced to weigh the credibility of the two experts' testimony and determine whether the victim was alive while beaten. However, as the trial court correctly charged the jury, depravity of mind may be proven by showing that the *deceased* body of the victim was subjected to mutilation or serious disfigurement. *West v. State*, 252 Ga. 156, 161-162 (313 SE2d 67) (1984). "A defendant cannot insulate himself from imposition of the death penalty on the basis of [OCGA § 17-10-30] by beating his victim to death in such a manner that it cannot be determined when the fatal blow was struck." *Patrick v. State*, 247 Ga. 168, 170 (274 SE2d 570) (1981). Thus, even under Terrell's new theory of the case and even in light of uncertainty as to the exact number of blows inflicted, the brutal beating in this case would have supported the statutory aggravating circumstance that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind.[2] Accordingly, this Court concludes that, even assuming trial counsel performed deficiently by failing to present testimony from another forensic pathologist, Terrell has failed to show any reasonable probability that the jury would have failed to find beyond a reasonable doubt the statutory aggravating circumstance that is based on depravity of mind.

Furthermore, only one statutory aggravating circumstance must be found before the jury becomes free to exercise discretion in selecting a sentence. See *Zant v. Stephens*, 250 Ga. 97, 99-100 (2) (297 SE2d 1) (1982). As noted above, Terrell has failed to show a reasonable probability that the jury would have declined to find the existence of an armed robbery, which means that Terrell would have been eligible for a death sentence regardless of whether the jury would have also found the statutory aggravating circumstance based on depravity of mind. In exercising its discretion once Terrell became eligible for a death sentence, the jury would not have been significantly swayed by testimony that the victim had already expired when

---

[1] The jury found each of these three sub-parts separately.

[2] There is also the strong possibility that the jury would have found that the murder was committed during the commission of an aggravated battery, based on the likely sequence and timing of the numerous gunshots and the need for Terrell to reload his pistol. However, this Court does not rely on this possibility, because the record does not support a conclusion that it rises to the level of probability necessary in an ineffective assistance of counsel claim. See *Davis v. State*, 255 Ga. 588, 593-595 (3) (c) (340 SE2d 862) (1986) (holding that the injury supporting a finding of an aggravated battery must be sufficiently distinct from the injury supporting a finding of murder).

beaten. In fact, evidence that the victim had passed away before he was so severely mutilated would have undercut defense counsel's argument that whoever committed the gruesome murder and mutilation did so in a panic. Terrell's new expert's testimony would have suggested that the brutal mutilation of the victim's body was completely senseless and depraved because the victim was no longer able to resist or flee. Certainly the jury would have taken note that the victim, who was possibly unconscious by all accounts, could not have suffered pain if he were dead during the beating, but any benefit from that would have been offset by a revulsion at a mutilation of the victim for no purpose whatsoever. Furthermore, seeming to quibble over the timing of the victim's death would have undercut defense counsel's core theory, which was that Terrell was not even present during the murder. Accordingly, this Court concludes that trial counsel's failure to present testimony at trial like that from Terrell's new expert, Dr. Arden, and trial counsel's failure to cross-examine Dr. Koponen differently did not result in prejudice sufficient to support the success of Terrell's overall ineffective assistance of trial counsel claim.

*D. Alleged Failure to Present Evidence About How the Shots Were Fired*

Terrell argues in his cross-appeal that trial counsel should have presented testimony showing that apparent soot residue on the corner of the victim's house, where the State argued that Terrell began firing at the victim, was never tested and that the downward angle of the shots could have been due to something other than Terrell's defective wrist. Terrell has presented no test results of his own from the apparent soot residue, and so he has failed to show prejudice arising out of what testing trial counsel might have actually done. Trial counsel could have cross-examined the State's witnesses about the failure of *the State* to do such testing; however, the jury would not have been swayed by such cross-examination for the following two reasons: first, the jury would almost certainly have believed the residue was truly soot in light of the other evidence; and, second, the key to the case was whether Terrell opened fire and began pursuing the victim and not the largely inconsequential detail of where he might have been located when he began his attack. At trial, the State presented testimony showing that Terrell had a defective wrist, which the State argued could account for the fact that the initial shots ricocheted off the victim's driveway rather than striking him. In the habeas court, Terrell presented expert testimony stating that the State's theory of where the attacker had been located and of why shots were fired downward was not the only possible explanation of the evidence. Instead, Terrell's new expert testimony suggested that the angle of fire could have been due to the

guilty plea is not invalidated "merely because the range of punishment on the plea was never recited to him, when he makes no claim that he was disadvantaged by the omission or even that he was in fact unaware of the possible sentence which could be imposed." *Hill v. Hopper*, 233 Ga. 633, 634 (212 SE2d 810) (1975). See also *Bess v. State*, 235 Ga. App. 372, 373 (1) (508 SE2d 664) (1998) (when defendant enters a negotiated guilty plea and receives the sentence for which he bargained, "the consequence of receiving the sentence to which [he] agreed can hardly be deemed unanticipated or adverse").

4. In his final enumeration, appellant contends that there was an inadequate factual basis for the offenses charged in the first indictment and no factual basis for the offenses charged in the second indictment. We have recognized as mandatory the requirement in USCR 33.9 that the trial court make "such inquiry on the record as may satisfy the judge that there is a factual basis for the plea." See *State v. Evans*, 265 Ga. 332 (2) (454 SE2d 468) (1995).

(a) Contrary to appellant's contention, the transcript of the plea hearing establishes that there was a sufficient factual basis for the offenses charged in the first indictment. Aside from the factual recitation by the prosecutor, the transcript also reflects that the trial judge tacitly agreed with the prosecutor regarding the court's familiarity with the facts, which was based upon the trial judge's role in presiding over the earlier trial of appellant's co-indictee for the same charged offenses. See *Pye v. State*, 269 Ga. 779 (505 SE2d 4) (1998). When the transcript presents evidence that the trial court was aware of the factual basis, USCR 33.9 does not otherwise require the trial court to affirmatively state that it is satisfied there is a factual basis. "In such an instance, the acceptance of a plea would be deemed a factual finding that there is an adequate factual basis for the plea. [Cit.]" *State v. Evans*, supra, 265 Ga. at 335 (2).

(b) The plea hearing transcript reflects and the State concedes that there was no factual basis presented at the hearing for the offenses of terroristic threats and simple battery charged in the second indictment. As we held in *State v. Evans*, supra, 265 Ga. at 336 (3), a violation of USCR 33.9 is examined under the analytical framework of "manifest injustice," see USCR 33.12, and we apply that analysis here. See *Wharton v. Henry*, 266 Ga. 557 (2) (469 SE2d 27) (1996) (applying "manifest injustice" standard in habeas proceedings); but see *Brown*, supra, 280 Ga. at 658 (2) (holding USCR 33.12 inapplicable where defendant's motion to withdraw his guilty plea was untimely).

> In undertaking the manifest injustice analysis, the reviewing court is authorized to examine evidence that was not

Terrell testified that Johnson had stated to him that Terrell "would be out in about 2000" and that Terrell had not murdered the victim. Terrell now argues that trial counsel also had access to two *other* witnesses, Terrell's cousin, Sonya Benton, and a defense investigator, Dan Goldman, who could have testified that before the third trial Johnson had stated cryptically that one day he would tell the truth. Dan Goldman testified further in the habeas court that he felt like Johnson was "toy[ing] with" him. In light of the fact that the jury had already heard that Johnson had made such a comment and in light of the other evidence of Terrell's guilt, this additional testimony does not contribute to an overall conclusion that, absent all of trial counsel's deficiencies, there would have been a reasonable probability of a different outcome.

*G. Failure to Present Testimony Showing Raymond Graham Agreed to Testify Against Terrell Only After Having His Parole Denied*

Raymond Graham testified that, before the murder, Terrell invited him to participate in the robbery and murder of a man for whom his mother worked and from whom he had stolen checks. Graham testified that he refused Terrell's offer because he was unwilling to participate in a murder. Graham further testified that, after the murder, Terrell admitted to killing the man and dragging his body to the back yard. Graham admitted that he agreed to testify for the State in exchange for the prosecutor's agreeing to write a letter to the Board of Pardons and Paroles but stated that he had been made no other promises. On cross-examination, trial counsel elicited further testimony from Graham admitting that he had only come forward with an offer to testify eight years after the fact, that he had admitted to the defense investigator that he was only agreeing to testify because he wanted to obtain parole, and that he had informed the trial court outside of the jury's presence that he would not testify without obtaining a deal from the State. Trial counsel also brought out the fact that the statement Graham claimed that Terrell had made incorrectly identified the location of the victim's gunshot wounds as being in the back of the head or in the ear. Terrell argues that trial counsel rendered ineffective assistance by failing to also elicit, in addition to this testimony, an admission from Graham that he had already been denied parole one time. In light of the clear testimony showing that Graham was highly motivated to obtain assistance in seeking parole, trial counsel's failure to ask this one additional question did not prejudice Terrell.

*H. Failure to Present Testimony Showing That Terrell Had Lived a Happy, Normal Life*

Terrell argues that trial counsel rendered ineffective assistance by failing to present testimony showing that Terrell had lived a

happy, normal life, had a good disposition, lacked mental illness, was raised in a loving home, and only began to have problems when he started to associate with a bad group of peers. Trial counsel presented the testimony of ten persons, including family members, pastors, and acquaintances. These witnesses described Terrell as a kind, helpful, loving person, who had a positive attitude and who had become dedicated to God. Several of these witnesses also asked the jury to show mercy to Terrell. This trial testimony is essentially identical to additional testimony from other lay persons that Terrell presented in the habeas court, and, accordingly, he has failed to show any significant prejudice with respect to testimony from lay persons.

Trial counsel arranged for Terrell to be evaluated by a psychologist, Dr. Robert Shaffer. Dr. Shaffer testified in the habeas court that he could have testified at trial that Terrell had no mental illness or personality disorder. Terrell argues that such testimony would have been mitigating; however, it is more easily regarded as aggravating in that it shows that Terrell had no forces other than his own personal choices compelling his precipitous decline into crime, murder, and continued criminal conduct in jail. Accordingly, this Court concludes that Terrell has failed to show any significant prejudice as to this sub-claim.

*I. Evaluation of the Combined Effects of Counsel's Deficiencies*

In the discussion above, this Court has set forth several aspects of trial counsel's performance that it has found to have been or has assumed to have been deficient, and the Court has discussed the prejudice stemming from those individual deficiencies. Considering now the combined effect of all of those deficiencies, this Court concludes as a matter of law that the absence of those deficiencies would not in reasonable probability have changed the result at trial. *Holsey*, 281 Ga. at 812, n. 1. Accordingly, Terrell's overall ineffective assistance of trial counsel claim, including the sub-parts addressed in both the Warden's appeal and Terrell's cross-appeal, must fail.

## III. Claims That Are Deemed Abandoned

Two of Terrell's claims, one alleging that the State suppressed exculpatory evidence and one challenging lethal injection as a method of execution, lack sufficient argument and citation to allow them to be meaningfully addressed. The same is true of Terrell's attempt in a footnote to adopt "any and all grounds raised below." Accordingly, these claims are deemed to have been abandoned. See Supreme Court Rule 22; *Head v. Hill*, 277 Ga. 255, 269 (VI) (A) (587 SE2d 613) (2003).

*Judgment reversed in Case No. S09A0087. Judgment affirmed in Case No. S09X0088. All the Justices concur.*

DECIDED JUNE 1, 2009.

*Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Patricia B. Attaway Burton, Susan V. Boleyn, Senior Assistant Attorneys General*, for appellant.
*Wystan B. Getz, Brian Kammer*, for appellee.