[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15427
_____

D.C. Docket No. 15-cv-04236-TCB


BRIAN KEITH TERRELL,

Plaintiff-Appellant,

versus

HOMER BRYSON, Commissioner, Georgia
Dept. of Corrections et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____


Before MARCUS, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Upon a thorough review of the record, including the parties' extensive filings, we conclude that the district court did not abuse its discretion in denying Brian Keith Terrell's motion for a stay of execution. *See Muhammad v. Secretary*,

739 F.3d 683, 688 (11th Cir. 2014) (reviewing denial of stay of execution for abuse of discretion). Given the Supreme Court's decision in *Glossip v. Gross*, 135 S.Ct. 2726, 2738-46 (2015), and our decisions in *Gissendaner v. Commissioner*, 803 F.3d 565, 567-69 (11th Cir. 2015), and *Wellons v. Commissioner*, 754 F.3d 1260, 1267 (11th Cir. 2014), Mr. Terrell has not shown a substantial likelihood of success on his claims concerning the implementation of Georgia's one-drug lethal injection protocol. First, he has not demonstrated a risk of severe pain. *See Glossip*, 135 S.Ct. at 2737; *Gissendaner*, 803 F.3d at 567-68. Second, he has not demonstrated that any such risk is substantial when compared to a known and available alternative. *See Gissendaner*, 803 F.3d at 568-69. Third, he has not demonstrated a due process right to the information that Georgia law keeps secret. *See Wellons*, 754 F.3d at 1267.

Mr. Terrell's motion for a stay of execution is therefore denied.

**MOTION FOR STAY OF EXECUTION DENIED.**

MARCUS, Circuit Judge, concurring:

On the eve of execution, Brian Keith Terrell filed this 42 U.S.C. § 1983 complaint in the United States District Court for the Northern District of Georgia, seeking to prevent the State of Georgia from executing him for the 1992 murder of seventy-year-old John Watson. Terrell claims that the execution, scheduled for 7:00 p.m. today, will violate the Cruel and Unusual Punishment Clause of the Eighth Amendment. He specifically argues that the State of Georgia's method of execution -- which uses compounded lethal injection drugs -- presents an imminent and substantial risk of serious harm to him. He also argues that a Georgia statute that classifies information about Georgia's execution protocols as a state secret violates his due process right to access information necessary to prosecute his Eighth Amendment claim. Today the district court denied Terrell's motion for temporary restraining order and stay of execution. Terrell appealed from the district court order and moved this Court for a stay of execution. I join the majority opinion issued by our Court today because Terrell has not come close to establishing a substantial likelihood of success on the merits.

The facts of the murder that Terrell committed have been laid out in our previous decision, which affirmed the denial of Terrell's petition for federal habeas relief under 28 U.S.C. § 2254(d)(1). See Terrell v. GDCP Warden, 744 F.3d 1255, 1258-59 (11th Cir. 2014); see also Hall v. Terrell, 679 S.E.2d 17, 19-20 (Ga.

3

2009). In short, approximately seven weeks after he was paroled from prison, Terrell shot and beat to death seventy-year-old John Watson to prevent Watson from reporting to the police that Terrell had forged Watson's signature on stolen checks totaling several thousand dollars. Thereafter, a Newton County, Georgia, grand jury indicted Terrell for malice murder, felony murder, and armed robbery of Watson, and ten counts of first-degree forgery. For various reasons, Terrell was then tried three times for the murder of Watson and the related crimes. After the third jury found him guilty and recommended a sentence of death, the Georgia Supreme Court upheld the conviction and sentence unanimously on appeal, Terrell v. State, 572 S.E.2d 595 (Ga. 2002), and the United States Supreme Court denied certiorari review, Terrell v. Georgia, 540 U.S. 835 (2003). Terrell's state court petition for a writ of habeas corpus was later rejected by the Georgia Supreme Court, see Terrell, 679 S.E.2d at 19, as was his federal petition for a writ of habeas corpus, see Terrell, 744 F.3d at 1258, cert. denied, Terrell v. Chatman, 135 S. Ct. 726 (2014).

After his death warrant was issued, Terrell filed an informal grievance with the Georgia Department of Corrections, and then a formal one, both of which were denied. On December 6th -- just two days before his scheduled execution date -- he commenced this action in the Northern District of Georgia, and moved the district court for a temporary restraining order and stay of execution. In a detailed

4

order, the district court today denied Terrell relief. It first concluded that Terrell's method-of-execution claim is time-barred, since Terrell's claim began to accrue in October 2003, when direct review of his convictions and sentences was completed, and the statute of limitations ran two years later, in October 2005. The court also determined that even if Terrell's claim was timely, he has not shown that he is likely to prevail on the merits of that claim. Relying on controlling case law from the Supreme Court and this Court, the district court laid out the elaborate procedure the State has undertaken to avoid a substantial risk of severe pain to Terrell during the execution, and observed that Terrell failed to point to a feasible alternative. The district court also rejected Terrell's due process claim concerning information about the method of his execution, which has been squarely foreclosed by our case law. Terrell now appears in this Court, raising the same claims.

All that is before us today is Terrell's motion for a stay of execution. A court may grant a stay of execution only if the moving party establishes that: "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." See Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011). And we review the denial of a stay of execution only for abuse of discretion. Id.

5

In an Eighth Amendment challenge to a lethal injection protocol, the Supreme Court has held:

> [P]risoners cannot successfully challenge a method of execution unless they establish that the method presents a risk that is " 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' " To prevail on such a claim, "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' " . . . [P]risoners "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." Instead, prisoners must identify an alternative that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."
>
> . . . [T]he requirements of an Eighth Amendment method-of-execution claim [are summarized] as follows: "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives."

Glossip v. Gross, 135 S. Ct. 2726, 2737 (2015) (citations and emphasis omitted); see also Baze v. Rees, 553 U.S. 35, 50, 61 (2008) (plurality opinion); Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1283 (11th Cir. 2015) (Gissendaner I).

Terrell has not come close to establishing a substantial likelihood that the State's lethal injection protocol has satisfied either of the two prongs required by the Supreme Court in Glossip and Baze: (1) that the protocol creates a "sure or very likely" risk of causing "serious harm"; and (2) that this risk is substantial

when compared to the known and available alternatives. Terrell relies primarily on the facts surrounding the execution of Kelly Gissendaner and Marcus Johnson, two Georgia inmates who were executed earlier this year. Prior to Gissendaner's originally scheduled execution date, in March 2015, a doctor inspected the lethal injection drugs that were to be used and concluded that there may have been safety concerns because the liquid solution appeared to have "precipitated," which means that white, solid materials had appeared in the liquid solution, causing it to appear cloudy. As a result, the State sent out two batches of its lethal injection drugs that had appeared precipitated to a laboratory for testing. The State also consulted with a pharmaceutical expert, and the Department of Corrections ran its own experiment on newly compounded pentobarbital. Notably, the State did not proceed with any executions until the testing process was completed, the State developed a proper course of action to keep precipitation from occurring in the future, and two new batches of compounded pentobarbital that did not precipitate were provided. Gissendaner was executed without incident in September. Johnson also was executed without incident in November.

As for the first prong of the Glossip/Baze test, Terrell argues that before Gissendaner's initial execution date in March, the State had received two batches of compounded pentobarbital solution that had precipitated. The affidavit of his expert, Dr. Michael Jay, opines, among other things, that "[i]f Ms. Gissendaner or

7

Mr. Terrell had been injected with the cloudy lethal injection drugs from March 2, and the cloudiness was attributable to particulate matter from precipitated [Active Pharmaceutical Ingredients] or contaminants, they would have suffered immense pain." (Emphasis added). Recognizing, however, that Georgia had decided to postpone Gissendaner's execution once it realized the solution was cloudy, Dr. Jay offers only that "[t]here is a real possibility that a compounded formulation could have a dangerous pH level or be polluted with contaminants, but would not display any outward manifestations of its internal flaws" and "could result in excruciating pain and suffering upon injection."

This is the most that Dr. Jay says. This proffer does not begin to satisfy the standard established by the Supreme Court, show a substantial likelihood that Terrell will succeed on the merits of his claim, or establish that the district court abused its discretion. For starters, Terrell has not shown that either Gissendaner or Johnson were injected with precipitated pentobarbital, nor that it has been used on any of the six prisoners (Gissendaner, Terrell, Marcus Wellons, Andrew Brannon, Robert Wayne Holsey, and Warren Lee Hill) who have been executed since Georgia began using compounded pentobarbital in its lethal injection protocol. Rather, the record extant indicates that when the State realized that a batch of the solution was cloudy -- as it did prior to Gissendaner's originally scheduled execution date -- it immediately postponed the execution and sent both batches that

8

it had in its possession for testing. As for Dr. Jay's observation that a batch could be contaminated without being cloudy or otherwise noticeable to the naked eye, Terrell offers no indication of whether this has ever occurred or whether any such occurrence is likely, much less that a non-cloudy contaminated batch has ever been used in an execution. This evidential foundation falls far short of suggesting that Georgia's lethal injection protocol poses a "substantial," "sure[,] or very likely" risk of "serious harm."

Terrell also points out that it took 19 minutes longer for Johnson to die than for Gissendaner to die, even though Gissendaner's total body weight was significantly greater than Johnson's. Terrell suggests that this calls into serious question what is actually being injected by the Department of Corrections for the purpose of execution. The essential problem with this argument too is that Terrell's experts go no further. They do not say Terrell would receive or even likely be given contaminated pentobarbital, or that he would suffer or is even likely to suffer serious harm. Indeed, the very timelines Terrell relies on to calculate the timing of death reveal that from the first injection of the drug into Johnson until his vital signs had ceased, he remained "calm," "quiet," and "still," and appeared "to be asleep." And the timeline concerning Gissendaner's execution likewise establish that she appeared "to be asleep" and was "still," "quiet," and "calm." There is no indication that either Gissendaner or Johnson were exposed to a

9

demonstrated risk of severe pain, let alone that Terrell himself would likely be exposed to a substantial or sure risk of needless suffering.  Terrell has simply failed to make a showing sufficient to satisfy this prong of the Supreme Court's test.

Moreover, Terrell has failed to establish the second, necessary prong of the Glossip/Baze test -- an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." Glossip, 135 S. Ct. at 2737 (quotation omitted).  As we've said in binding precedent, "a readily available alternative" showing is required in all challenges to lethal injection protocols.  See Gissendaner v. Comm'r, Georgia Dep't of Corr., 803 F.3d 565, 569 (11th Cir. 2015) (Gissendaner II).  In support of this requirement, Terrell has offered only one sentence in his complaint, and it reads this way:  "As to alternatives, it would be reasonable to obtain drugs from a compounding pharmacist who does not have such a history of mixing defective drugs -- particularly given the evidence that the two executions carried out with his drugs suggest that the properties of the substances that he mixes vary greatly from one batch to another."  He offers nothing more; and, indeed, his experts say nothing about "feasible, readily implemented" alternatives, let alone alternatives that would significantly reduce a substantial risk of severe pain.  Nor does Terrell establish whether it would be "feasible" to obtain lethal injection drugs from another compounding pharmacy, whether using another pharmacy would be

10

"readily implemented," or, finally, whether this other pharmacy would reduce "a substantial risk of severe pain." Without any real effort to make this showing, Terrell has failed to establish, as he must, a substantial likelihood that he could succeed on either prong of the Supreme Court's test.

Finally, I also agree with the majority that Terrell has not made any showing of a due process violation based on the secrecy surrounding Georgia's lethal injection protocol. See Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1267 (11th Cir. 2014) ("Neither the Fifth, Fourteenth, or First Amendments afford [a prisoner] the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.") (quotations omitted). We are bound by this precedent.

I am satisfied that Terrell has failed to establish any likelihood of success on the merits, or that the district court abused its considerable discretion in denying the stay of execution. I join the majority's decision.

MARTIN, Circuit Judge, concurring:

Under Glossip v. Gross, ___ U.S. ___, 135 S. Ct. 2726 (2015), Gissendaner v. Comm'r, Ga. Dep't of Corr., 803 F.3d 565 (11th Cir. 2015) (per curiam), and Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260 (11th Cir. 2014) (per curiam), I am compelled to agree that the District Court did not abuse its discretion in denying Mr. Terrell's motion for temporary restraining order and stay of execution. I share Judge Jordan's view, however, that Gissendaner was wrongly decided. See Gissendaner, 803 F.3d at 576–81 (Jordan, J., dissenting).

The Eighth Amendment to the U.S. Constitution forbids methods of execution that present "a substantial risk of significant harm." Baze v. Rees, 553 U.S. 35, 50, 128 S. Ct. 1520, 1531 (2008) (plurality opinion) (quotation omitted); see also Glossip, 135 S. Ct. at 2737. In this regard, the standard set for a death row inmate to bring a successful method-of-execution challenge is quite demanding.

Mr. Terrell now presents us with such an Eighth Amendment cruel and unusual punishment claim alleging the risk of future harm. For this claim, precedent requires him to show "the conditions presenting the risk must be 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" Baze, 553 U.S. at 50, 128 S. Ct. at 1530–31 (quoting Helling v. McKinney, 509 U.S. 25, 33, 34, 113 S. Ct. 2475, 2480, 2481

12

(1993) (emphasis added)); see also Glossip, 135 S. Ct. at 2737. Beyond that, in the lethal injection context, this standard requires an inmate to show an "objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." Glossip, 135 S. Ct. at 2737 (quotation omitted). And in any event, "[a] stay of execution may not be granted" pursuant to a method-of-execution challenge "unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives." Id. (alteration in original) (quoting Baze, 553 U.S. at 61, 128 S. Ct. at 1537). Thus Mr. Terrell faces a substantial hurdle in getting the relief he now asks us to give him.

At the same time Mr. Terrell faces this heavy burden in federal court, the State of Georgia has made critical aspects of its execution procedure a "confidential state secret." Ga. Code Ann. § 42-5-36(d)(2).[1] Georgia's secrecy rules being what they are, I do not see how Mr. Terrell could ever get the information necessary to state an Eighth Amendment claim about lethal injection.

---

[1] Section 42-5-36(d)(2) of the Georgia Code states:

> The identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure under Article 4 of Chapter 18 of Title 50 or under judicial process. Such information shall be classified as a confidential state secret.

Ga. Code. Ann. § 45-5-36(d)(2).

13

The shroud of secrecy imposed by Georgia law effectively insulates the State of Georgia's source, quality, and composition of pentobarbital from any scrutiny, leaving the condemned without any meaningful notice or opportunity to be heard about the specific risks he faces from the State's reliance on an unidentified compounding pharmacy. This leaves Mr. Terrell with no ability to plead facts necessary to meet the demanding burden the law imposes on him.

I am equally concerned about this Court's ability to meaningfully discharge its constitutional duty to assess the risks associated with Mr. Terrell's execution against relevant Eighth Amendment standards. While Georgia's pleadings offer assurance that the production of the drugs which will be used to execute Mr. Terrell will work fine, Georgia's pleadings do not constitute evidence. Indeed, we have no reliable evidence by which to independently evaluate the safety and efficacy of the State of Georgia's secret drugs.[2] For me, this raises serious due

---

[2] For example, the parties dispute the reasons why the pentobarbital that was compounded for Ms. Gissendaner's execution on March 2, 2015 went bad, or as the parties say, "precipitated." Relying on Dr. Jason Zastre, the State says "the most likely cause of precipitation observed within the solution was that the solution was shipped and stored at a temperature which was too low. An additional possible cause could be if the pharmaceutical solvent used to dissolve the pentobarbital had absorbed some amount of water or evaporated during the preparation process." In contrast, Mr. Terrell believes the cold-storage theory "for why two batches of their pharmacist's drugs congealed has been disproven by [the Georgia Department of Corrections's] own testing," and he argues that the Department of Corrections has still not determined the cause of the precipitation problem, which makes it likely to recur. Terrell's most troubling allegation "is that the defects in the means or method by which Defendants' pharmacist mixes these drugs would not always manifest themselves in a readily visible way," despite hourly visual observations by the Department of Corrections on the day of execution. According to Mr. Terrell's expert, Dr. Michael Jay, "a compounded formulation could have a dangerous pH level

process concerns.  Cf. Ford v. Wainwright, 477 U.S. 399, 414, 106 S. Ct. 2595, 2604 (1986) ("[C]onsistent with the heightened concern for fairness and accuracy that has characterized our review of the process requisite to the taking of a human life, we believe that any procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate."); Solesbee v. Balkcom, 339 U.S. 9, 23, 70 S. Ct. 457, 464 (1950) (Frankfurter, J., dissenting) ("And the minimum assurance that the life-and-death guess will be a truly informed guess requires respect for the basic ingredient of due process, namely, an opportunity to be allowed to substantiate a claim before it is rejected.").

Of course, I recognize the State's need to obtain a reliable source for its lethal injection drugs.  But there must be a way for Georgia to do this job without depriving Mr. Terrell and other condemned prisoners of any ability to subject the State's method of execution to meaningful adversarial testing before they are put to death.  A defendant cannot have received due process when he must wait for a botched execution, or other mishap, in order to get sufficient information to satisfy Glossip and vindicate his Eighth Amendment rights.  Federal courts routinely

---

or be polluted with contaminants, but would not display any outward manifestations of its internal flaws."  See also Gissendaner, 803 F.3d at 579 (Jordan, J., dissenting) (noting there is "no guarantee that a doctor or pharmacist will recognize the problem the next time, particularly if the compounded pentobarbital has an incorrect pH or is, despite its adulteration, only slightly cloudy").

construct procedures in other areas of the law (in the grand jury setting or in proceedings involving commercial trade secrets, for example) to protect one side's legitimate privacy interests and at the same time guard the Constitutional rights of the other. The procedure that now exists in Georgia for preparing lethal injection drugs accomplishes the former at the expense of the latter. Surely, if we can protect grand jury proceedings and commercial trade secrets, we can come up with a process that protects the important interests of both Georgia and Mr. Terrell as the State carries out the "gravest sentence our society may impose."[3] Hall v. Florida, ___ U.S. ___, ___, 134 S. Ct. 1986, 2001 (2014).

---

[3] For example, district courts use protective orders to prescribe discovery methods that protect the State's interest in secrecy while providing the defendant and his expert(s) a meaningful opportunity to assess the relevant Eighth Amendment risks. See Fed. R. Civ. P. 26(c)(1); cf. Pennsylvania v. Ritchie, 480 U.S. 39, 60, 107 S. Ct. 989, 1002–03 (1987) (recognizing that where a conflict exists between a State's assertion of confidentiality in a criminal trial and a defendant's right to due process, records may be submitted to the trial court for in camera review).

16

JORDAN, Circuit Judge, concurring:

I dissented in *Gissendaner v. Commissioner*, 803 F.3d 565, 576 (11th Cir. 2015) (Jordan, J., dissenting), and continue to believe that it was wrongly decided. But it is now the law of the circuit, and given its existence as binding precedent, I agree that the district court did not abuse its discretion in denying the motion for a stay of execution.