[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13660

_____

D.C. Docket No. 1:09-cv-01897-TCB

BRIAN KEITH TERRELL,

Petitioner - Appellant,

versus

GDCP WARDEN,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 11, 2014)

Before MARCUS, MARTIN, and DUBINA, Circuit Judges.

DUBINA, Circuit Judge:

Petitioner Brian Keith Terrell ("Terrell"), a Georgia death row inmate,

appeals the district court's judgment denying him federal habeas relief pursuant to

28 U.S.C. § 2254.  The district court denied his request for a certificate of appealability ("COA"), but we granted his application for a COA with regard to two claims of ineffective assistance of counsel.  After reviewing the record, reading the parties' briefs and having the benefit of oral argument, we affirm the district court's judgment denying Terrell habeas relief.

## I.  BACKGROUND

### A.  *Facts*

Terrell's mother, Barbara Terrell ("Barbara"), was a friend to the victim, seventy-year-old John Watson ("Watson"), who suffered health problems and required dialysis three times per week.  For over two years, she had been assisting him with meals and errands without any compensation.  The two had discussed marriage, and Watson had promised to include Barbara in his will.  While she was performing these acts of kindness, Terrell was in prison.  On May 1, 1992, Terrell was released from prison and thus began the tragic events that led to Watson's murder.

On June 20, 1992, Watson notified the sheriff's office that he had received ten canceled checks that had been stolen and forged, totaling $8,700.  Some of the checks had been made payable to Terrell.  Because of his friendship with Barbara, Watson asked the sheriff to wait a few days before arresting Terrell.  Watson informed Barbara about the forgeries and told her that he would not request a

2

warrant for Terrell if he returned most of the money by Monday, June 22.  Barbara relayed this information to Terrell, who promised to repay the money.  However, the following day, Terrell reneged on his promise.

Authorities found Watson's body on his property on June 22, the date he requested that Terrell repay the stolen money.  The evidence indicated that Watson had been shot four times and had been severely beaten in the face and head.  The medical examiner testified that either the gunshots or the beating would have been fatal and that Watson was still alive when he received all these injuries.  The shell casings found on Watson's driveway indicated a .38 or .357 caliber revolver had been used in the shooting.

Jermaine Johnson, Terrell's cousin, confessed to his role in the crime and testified at trial in exchange for a five-year sentence for robbery.  He stated that he and Terrell checked into a motel near Watson's house at midnight on June 21.  Terrell locked the keys in his blue Cadillac and, despite the assistance of a sheriff's deputy, they were unsuccessful at unlocking the car door.  He said that he and Terrell went to bed and awoke at 6:30 a.m. on June 22.  They broke a window to get into the Cadillac.  Terrell had a .357 or .38 caliber revolver and he asked to be dropped off at Watson's house.  Terrell told Johnson to return for him at 9:00 a.m.  Johnson went back to the motel, slept until 8:30 a.m., and then drove back to pick up Terrell. Before 9:00 a.m., he had a conversation with the motel manager in the parking lot as he was leaving.  The manager noticed that the broken glass in the parking lot was on the side of the car opposite the broken window, indicating that the Cadillac had been moved since the window was broken.  The man with whom she spoke matched Johnson's description and she testified that he was alone.

Johnson drove back and forth on the road in front of Watson's house, stopping at a Wal-mart and a convenience store to wait.

3

Witnesses saw Johnson driving Terrell's blue Cadillac at this time. Johnson testified that Terrell appeared near Watson's house and he stopped and picked him up. Watson's neighbor testified that at approximately 9:30 a.m., she saw a man wearing a white shirt standing next to a large blue car parked on the side of the road. Terrell was wearing a white shirt on June 22. Terrell told Johnson that he had shot a man. Terrell bought new clothes at a department store and took a bath at his grandmother's house while Johnson washed the car. Later, Terrell took his son to the zoo.

When questioned by the police, Terrell admitted committing the forgeries, but denied the murder. He said that he and Johnson had checked into the motel with a woman, who was never identified, and stayed there all night after he had locked his keys in the car. He said that they did not leave until 10:00 or 10:30 a.m., when they broke the window to get into the Cadillac. Later in the interview, a police officer asked him how the woman got home and Terrell stated that Johnson drove her home early that morning, which would have been impossible if the keys were locked in the car at that time. When Terrell realized that he had contradicted himself, he refused to answer any more questions.

*Terrell v. State*, 271 Ga. 783, 784–86, 523 S.E.2d 294, 296–97 (1999).

B. *Procedural History*

A Newton County, Georgia, grand jury originally indicted Terrell on July 13, 1992, for malice murder, felony murder, and armed robbery of Watson. Later, the grand jury charged Terrell on ten counts of first degree forgery. Terrell's first trial, conducted in Houston County based on a change of venue, ended in a mistrial because the jury was unable to reach a unanimous verdict in the guilt phase. John Strauss ("Strauss") represented Terrell at his first trial. The State subsequently dropped the felony murder and armed robbery counts. In 1995, Terrell's second

4

trial was conducted in Walton County, based on another change of venue, and Terrell was again represented by Strauss. The jury convicted Terrell on the malice murder and forgery charges, and the trial court sentenced him to death for the malice murder conviction. On appeal, the Georgia Supreme Court reversed the convictions due to an error in the jury selection. *See Terrell v. State*, 271 Ga. at 783–84, 523 S.E.2d at 296.

Terrell's third trial began in January 2001, and the jury again convicted him on the malice murder charge and the ten counts of first-degree forgery. Strauss continued to represent Terrell and utilized a different defense than he did in the first two trials. Instead of pointing fingers at numerous possible suspects like he did at the first two trials, Strauss focused the defense on Terrell's cousin, Jermaine Johnson ("Johnson"), as the lone gunman and argued that Terrell was not present at the crime scene. Terrell himself testified at the third trial and although he admitted to stealing and forging the checks, he denied any involvement in the beating or murder of Watson. However, the jury found Terrell guilty and recommended a death sentence for the malice murder conviction, finding the following aggravating circumstances: (1) the murder was committed while Terrell was engaged in an aggravated battery and an armed robbery; and (2) the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind and an aggravated battery to the victim before death. *See*

5

O.C.G.A. § 17-10-30(b)(2), (7) (1998).  The trial court accepted the jury's recommendation and, in addition to imposing the death sentence, sentenced Terrell to ten consecutive ten-year sentences for the forgery convictions.  Terrell filed a motion for a new trial, and an amended motion for new trial, both of which the trial court denied.  On appeal, the Georgia Supreme Court affirmed Terrell's convictions and sentences.  *See Terrell v. State*, 276 Ga. 34, 572 S.E.2d 595 (2002).  The United States Supreme Court denied certiorari review.  *See Terrell v. Georgia*, 540 U.S. 835, 124 S. Ct. 88 (2003).

Terrell filed a state habeas petition, and after an amendment to the petition and an evidentiary hearing, the trial court denied relief as to Terrell's convictions but granted relief as to his death sentence, based on a number of specific claims of ineffective assistance of trial counsel.  On appeal, the Georgia Supreme Court reversed the grant of habeas relief as to Terrell's death sentence, reinstated his death sentence, and affirmed the habeas court's denial of relief on all other claims. *See Hall v. Terrell*, 285 Ga. 448, 679 S.E.2d 17 (2009).

Terrell then sought federal habeas corpus relief, which the district court denied.  After the district court denied Terrell's request for a COA, we granted his request on two claims of ineffective assistance of counsel: (1) whether counsel was ineffective for failing to obtain the services of a forensic pathologist; and (2) whether counsel was ineffective for not challenging sufficiently the armed robbery

6

statutory aggravator.  Based upon our independent review, we conclude that there is no merit to these claims of ineffectiveness of counsel, and we therefore affirm the district court's judgment denying Terrell habeas relief.

## II.  ISSUES

A.    Whether the district court erred in finding that the state court's denial of relief on Terrell's claim of ineffective assistance of counsel regarding the hiring of a forensic pathologist was neither contrary to, nor an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), nor was based on an unreasonable determination of the facts.

B.    Whether the district court erred in finding that the state court's denial of relief on Terrell's claim of ineffective assistance of counsel regarding a challenge to the armed robbery statutory aggravator was neither contrary to, nor an unreasonable application of, *Strickland v. Washington*, *supra*, nor was based on an unreasonable determination of the facts.

## III.  STANDARD OF REVIEW

On habeas, we review *de novo* the district court's conclusions on legal questions and mixed questions of law and fact, and we review the district court's findings of fact for clear error.  *Mason v. Allen*, 605 F.3d 1114, 1118 (11th Cir.

7

2010).  The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA") imposes a highly deferential standard for reviewing the state court rulings on the merits of constitutional claims raised by a petitioner.  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786–87 (2011).  Hence, AEDPA permits a federal habeas court to grant habeas relief only when the decision of the state court either was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The phrase "contrary to" means that the state court decision applied a rule that contradicts the governing law set forth by the United States Supreme Court, or when faced with materially indistinguishable facts, it arrived at a result that differs from Supreme Court precedent.  *Kimbrough v. Sec'y, Dep't of Corr.*, 565 F.3d 796, 799 (11th Cir. 2009).  An "unreasonable application" of clearly established federal law occurs when "the state court correctly identifies the governing legal principle .

8

. . but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S. Ct. 1495, 1522 (2000). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at ___, 131 S. Ct. at 786. Therefore, we must deny federal habeas relief as long as "some fairminded jurists could agree with the state court's decision, although others might disagree." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011).

Terrell's burden to establish a claim of ineffective assistance of counsel is onerous. He must show both that his counsel's assistance was deficient and that the deficient performance prejudiced him. *Richter*, 562 U.S. at ___, 131 S. Ct. at 787. Counsel's assistance is deficient if it "fell below an objective standard of reasonableness," and if it did, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068. Because Terrell must satisfy both components of the ineffective assistance inquiry, the court does not have to address both components if Terrell makes an insufficient showing on one. *See Suggs v. McNeil*, 609 F.3d 1218, 1228 (11th Cir. 2010). Under AEDPA, Terrell must establish that the state court's

application of *Strickland* was unreasonable under 28 U.S.C. § 2254(d).  "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'"  *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Richter*, 562 U.S. at ___, 131 S. Ct. at 788).  Thus, it is a rare case in which a petitioner obtains federal habeas relief on an ineffective assistance of counsel claim that the state court denied on the merits.  *Id.*

## IV.  DISCUSSION

### A.  *Failure to obtain a forensic pathologist*

Terrell takes issue with the district court's finding that the state court's adjudication of his claim of ineffective assistance for counsel's failure to obtain the services of a forensic pathologist was neither contrary to, nor an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts presented in the state proceedings.  Terrell agrees with the state trial court that his attorney performed deficiently in this regard; however, he disagrees with the Georgia Supreme Court's finding that although his counsel was ineffective, Terrell did not demonstrate prejudice.  *See Terrell*, 285 Ga. at 453, 679 S.E.2d at 22.  Terrell asserts that there is a reasonable probability that the jury would not have found the requisite aggravating factors for imposition of the death penalty if

10

Strauss had presented evidence from a forensic pathologist to challenge the State's expert, who opined that the victim was still alive at the time he suffered the blows to his face and head. Thus, he contends that his sentencing was prejudiced as a result of his counsel's deficient performance, and the district court erred in denying him habeas relief on this claim.

### 1. State court decision

The state habeas court granted Terrell relief on this claim, and the Georgia Supreme Court reversed, finding that Terrell could not demonstrate that he suffered prejudice from his counsel's deficient performance in failing to obtain the assistance of a forensic pathologist. In its analysis, the state supreme court first noted that the State presented testimony at trial from a forensic pathologist, Dr. Mark Koponen, who testified that the victim was shot first and then beaten severely about the face and head, possibly with the butt of a pistol. *Id.* at 451, 679 S.E.2d at 21. Dr. Koponen further testified at trial that the victim was alive during the beating because he had bleeding underneath the membrane covering the brain. *Id*. at 452, 679 S.E.2d at 21. "Dr. Koponen testified that the victim was only possibly conscious during the beating, but that he was definitely alive." *Id.*

The state supreme court then highlighted the testimony from the state habeas hearing and concluded that Terrell did not demonstrate that he was prejudiced by his counsel's ineffectiveness in failing to utilize a forensic pathologist.

11

Terrell presented testimony in the habeas court from Dr. Jonathan Arden contradicting the conclusions of Dr. Koponen. Dr. Arden generally criticized Dr. Koponen's autopsy of the victim. More specifically, he contradicted Dr. Koponen's conclusion that the victim was alive during the beating and stated that it was *possible* that the victim had been struck fewer times than the five or six blow minimum asserted by Dr. Koponen, particularly in light of the possibility that the wounds were inflicted by some mechanism other than the pistol, such as by stomping. Dr. Arden testified that photographic evidence of the minimal bleeding from the victim's facial wounds, the lack of aspirated blood, and the presence of only "minute contusions" in the brain tissue all indicated that the victim was deceased before being beaten. He also testified that Dr. Koponen's finding that the victim had bleeding in the subarachnoid space, which is the area underneath the membrane covering the brain, and his finding of bleeding in lacerated brain tissue were inconsistent with his finding that the victim had no bleeding above and below the dura, which is a membrane just below the skull and which was torn as the victim's skull was crushed.

Although he did not note this fact in his trial testimony, Dr. Koponen responded to the criticism of his autopsy findings in the habeas court with the added statement that he found clotted blood in the ventricles of the interior of the victim's brain, which he believed was further evidence that the victim was alive during the beating. He also explained that his findings of only minimal bleeding from the wounds was [sic] consistent with the victim having lost much of his blood pressure while still alive. The habeas court emphasized that Dr. Koponen was young and relatively inexperienced when he conducted his autopsy of the victim. However, by the time of his habeas testimony, Dr. Koponen was highly experienced and maintained that his initial findings were correct. Dr. Arden, who could merely review the record for his habeas testimony, stood in no better position to second guess Dr. Koponen's original findings than Dr. Koponen did himself.

Dr. Koponen's testimony that the victim was alive but possibly unconscious supported the following two statutory aggravating circumstances: (1) that the murder was committed while Terrell was engaged in an aggravated battery and (2) that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved

12

torture, depravity of mind, and an aggravated battery to the victim. OCGA § 17-10-30(b)(2), (7).  Had the jury heard testimony like Dr. Arden's, it would have been forced to weigh the credibility of the two experts' testimony and determine whether the victim was alive while beaten.  However, as the trial court correctly charged the jury, depravity of mind may be proven by showing that the *deceased* body of the victim was subjected to mutilation or serious disfigurement. . . . Thus, even under Terrell's new theory of the case and even in light of uncertainty as to the exact number of blows inflicted, the brutal beating in this case would have supported the statutory aggravating circumstance that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind. Accordingly, this Court concludes that, even assuming trial counsel performed deficiently by failing to present testimony from another forensic pathologist, Terrell has failed to show any reasonable probability that the jury would have failed to find beyond a reasonable doubt the statutory aggravating circumstance that is based on depravity of mind.

Furthermore, only one statutory aggravating circumstance must be found before the jury becomes free to exercise discretion in selecting a sentence. . . . As noted above, Terrell has failed to show a reasonable probability that the jury would have declined to find the existence of an armed robbery, which means that Terrell would have been eligible for a death sentence regardless of whether the jury would have also found the statutory aggravating circumstance based on depravity of mind.  In exercising its discretion once Terrell became eligible for a death sentence, the jury would not have been significantly swayed by testimony that the victim had already expired when beaten.  In fact, evidence that the victim had passed away before he was so severely mutilated would have undercut defense counsel's argument that whoever committed the gruesome murder and mutilation did so in a panic.  Terrell's new expert's testimony would have suggested that the brutal mutilation of the victim's body was completely senseless and depraved because the victim was no longer able to resist or flee.  Certainly the jury would have taken note that the victim, who was possibly unconscious by all accounts, could not have suffered pain if he were dead during the beating, but any benefit from that would have been offset by a revulsion at a mutilation of the victim for no purpose whatsoever.  Furthermore, seeming to quibble

13

over the timing of the victim's death would have undercut defense counsel's core theory, which was that Terrell was not even present during the murder. Accordingly, this Court concludes that trial counsel's failure to present testimony at trial like that from Terrell's new expert, Dr. Arden, and trial counsel's failure to cross-examine Dr. Koponen differently did not result in prejudice sufficient to support the success of Terrell's overall ineffective assistance of trial counsel claim.

*Id.* at 452–54, 679 S.E.2d at 21–23 (internal quotation marks, citations and footnotes omitted).

### 2. Federal court decision

On federal habeas review, the district court analyzed only the prejudice finding of the Georgia Supreme Court and concluded that the record evidence supported the state supreme court's factual determinations. It also concluded that the state supreme court's adjudication was in accord with *Strickland* and its progeny. The district court found that the state supreme court did not unreasonably apply *Strickland* when it determined that trial counsel's alleged failure to obtain a forensic pathologist did not prejudice Terrell because the likelihood of a different result was not substantial. The district court reasoned that even if Terrell had presented the forensic pathologist's testimony that the victim was dead when he received the blows to the head and face, the jury would still have found the depravity of mind aggravator to exist because of the repulsive and significant injuries to the victim. *See* O.C.G.A. § 17-10-30(b)(7). Thus, the district court

14

concluded that Dr. Arden's testimony, if given at trial, would not have created a probability sufficient to undermine confidence in the death sentence.

3. Analysis

The district court properly denied Terrell relief on this claim. The state supreme court correctly found that trial counsel's failure to engage the services of a forensic pathologist did not prejudice Terrell because the "likelihood of a different result [was not] substantial." *Richter*, 562 U.S. at ___, 131 S. Ct. at 792. The state supreme court's determination was neither based on unreasonable factual findings nor was it an unreasonable application of *Strickland* to the facts.

The state supreme court's factual findings are supported by the record. Our record review indicates that at Terrell's third trial, Strauss employed a residual doubt mitigation theory which was different than the defense Strauss presented at the two earlier trials. Strauss argued vehemently that Terrell was not present at the scene of the crime, and he noted the lack of physical evidence presented by the State to prove Terrell's guilt. Strauss attempted to plant the seed of residual doubt in the jurors' minds by pointing to Terrell's cousin, Johnson, as the lone murderer. Terrell himself testified that he did steal and forge Watson's checks, but he did not murder and beat him.

The state supreme court reasonably applied the prejudice prong of *Strickland* to the facts. In light of the residual doubt theory, Strauss did not present the

15

testimony of a forensic pathologist to contradict the State's expert on the issue of whether the victim was alive or dead at the time he received the blows to the face and head. That distinction was not vital to the defense. Evidence that the victim was dead when he received the numerous blows to his head and face would have undercut the defense theory that whoever committed the gruesome murder and mutilation did so in a panic. Rather, this evidence would have suggested that whoever murdered Watson did so with malice and anger. It would have supported the State's theory that Terrell had a motive to kill Watson: to keep him quiet so Terrell would not be arrested and returned to prison. Thus, no reasonable attorney would present evidence that contradicted its defense theory and supported the State's theory.

Furthermore, this evidence would not have invalidated the statutory aggravator of depravity of mind. Showing that the deceased body of the victim was subjected to mutilation or serious disfigurement, whether the victim was conscious/unconscious or dead/alive, satisfies the statutory aggravator of depravity of mind. *See Davis v. Kemp*, 829 F.2d 1522, 1534 (11th Cir. 1987); *Conklin v. State*, 254 Ga. 558, 565, 331 S.E.2d 532, 539 (1985); *West v. State*, 252 Ga. 156, 161–62, 313 S.E.2d 67, 71 (1984); *Hance v. State*, 245 Ga. 856, 862, 268 S.E.2d 339, 346 (1980). The jury found that the evidence supported each of the three sub-parts of the statutory aggravating circumstances separately: that the murder was

16

outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, and an aggravated battery.  O.C.G.A. § 17-10-30(b)(2), (7). Because the jury need find only one statutory aggravating factor to justify the imposition of the death penalty, *Zant v. Stephens*, 250 Ga. 97, 100, 297 S.E.2d 1, 3–4 (1982), the invalidation of this one factor would not have likely changed the outcome of Terrell's sentence.

Even in light of Dr. Arden's testimony that the victim was dead when he suffered the blows to his head and face, Terrell cannot show any reasonable probability that the jury would not have found the statutory aggravator of depravity of mind beyond a reasonable doubt.  At trial, Dr. Koponen testified that although alive, Watson was unconscious and could not feel the blows to his head and face. Thus, regardless of whether the victim was alive or dead at the time he received the brutal facial beating that caused significant mutilation and disfigurement, the jury still had evidence to support the aggravating circumstances.  Accordingly, there is no reasonable probability that the outcome of Terrell's sentence would have been different, and the Georgia Supreme Court's determination that Terrell did not suffer prejudice is reasonable; hence, Terrell is not entitled to relief on this claim of ineffectiveness of counsel.

B.  *Challenge to the armed robbery aggravator*

17

At Terrell's first trial, the State sought a conviction for armed robbery as well as a finding of the armed robbery aggravator. At the second and third trials, the State sought only a finding of armed robbery as an aggravating factor. The jury at the second trial did not find that the evidence supported this aggravating factor, but the jury at the third trial did. Terrell challenged the State's theory and evidence to support this aggravating factor and asserted in his state habeas petition that his counsel was ineffective for conceding this statutory aggravator instead of challenging its application. The state habeas court agreed with Terrell and found that no reasonable attorney would have failed to challenge this aggravating factor, especially given the prior success Strauss had in challenging it. Agreeing with the state habeas court, Terrell claims Strauss rendered ineffective assistance. Thus, he asserts that the Georgia Supreme Court and the federal court's findings to the contrary are unreasonable and this court should grant him relief on this claim.

1. State court decision

On appeal, the Georgia Supreme Court reversed the state habeas court and concluded that Terrell's counsel was not ineffective in failing to challenge the armed robbery aggravating factor. In making this determination, the state supreme court noted that although the state habeas court found that the victim had $1.61 in his right-front pocket after the murder, that sum of money was comprised merely of coins, which Terrell likely would not have been interested in taking during the

18

crime. The state supreme court found that although the habeas court relied upon the investigator's testimony that the victim's wallet was undisturbed, the evidence at trial showed that people in the community, and Terrell, knew that Watson carried his cash separately in his left-front pocket and kept his wallet in his back pocket.

Furthermore, the investigators found the victim's left-front pocket turned out and empty, and evidence showed that Watson had withdrawn $150 from the bank the weekend before the murder. The supreme court reasoned that Watson probably had some of this cash with him on the day of his murder because he was planning to leave his home to receive his dialysis treatment. In addition, the evidence showed that after the murder, Terrell shopped for clothes and paid cash, although Terrell had not worked regularly since his release from prison, about six weeks prior to the murder. Most significantly, at the third trial, the State presented the testimony of Raymond Graham who stated that Terrell asked him if he wanted to participate in murdering and robbing Watson. Due to the significant amount of circumstantial evidence to support the jury's finding of the armed robbery aggravator, the state supreme court found that Strauss was not deficient in failing to challenge this aggravator.

To further support its finding that Strauss was not deficient in failing to challenge this aggravator, the state supreme court, unlike the state habeas court,

19

found that Strauss did not concede the armed robbery aggravator.  It noted that Strauss proffered during closing argument in the sentencing phase that the evidence did not support the State's theory that the crime had been committed in anger, but instead, that the evidence indicated that the crime had been committed in a panic, "perhaps in response to an intended robbery having gone wrong." *Terrell*, 285 Ga. at 451, 679 S.E.2d at 21.  The supreme court found this argument to be "a speculation as to why some other person might have been at the scene of the murder and not a concession that an armed robbery had been committed." *Id.* Hence, the state supreme court concluded that Terrell's counsel did not perform deficiently with regard to the armed robbery aggravator, and that the additional testimony Terrell presented in the habeas court, if presented at trial, would not in reasonable probability have changed the outcome of Terrell's sentence.  Thus, it reversed the state habeas court's grant of sentencing phase relief to Terrell on this claim.

### 2.  Federal court decision

In analyzing the state court's decision under AEDPA, the district court first determined that the state supreme court's decision was not based on an unreasonable determination of the facts.  The record supported the state supreme court's findings regarding the lack of cash in the victim's left-front pocket after the murder, Terrell's purchase of clothes with cash on the day of the murder, Watson's

20

withdrawal of $150 from the bank two days before the murder, and Raymond Graham's testimony that Terrell asked him to assist in robbing and murdering Watson. In sum, the district court found that overwhelming circumstantial evidence supported the jury's finding of the armed robbery aggravator.

The district court next determined that the state supreme court did not unreasonably apply *Strickland* to the facts of the case in finding that Strauss did not render deficient performance. First, the district court found that Strauss continuously challenged the armed robbery aggravator. [R. Vol. VII, p. 1585, Doc. 5-38, p. 26.] On cross-examination, Strauss elicited testimony from the State's investigator that he could not say with certainty that Watson had money in his pocket when he was murdered. Strauss also questioned Graham about his eight-year delay in providing testimony that Terrell asked him to assist in the robbery and murder of Watson. Strauss extracted from Graham that he told an investigator that he was only testifying because he wanted parole from the sentence he was serving. In fact, Graham admitted that when the State informed him that he would not receive a deal in exchange for testifying, he initially refused to testify. Strauss had Graham admit to numerous convictions and had him inform the jury that he was currently serving a life sentence as a result of a felony murder conviction.

The district court also found that Strauss did not concede the armed robbery aggravator during the sentencing phase closing argument. Strauss was

21

commenting on State witness Sam House's testimony when he made the alleged concession.

> The D.A. keeps saying [Terrell] was angry, this was an anger crime. Where is there any anger shown in the evidence between Mr. Watson and [Terrell]? Where? It's not there. That's the D.A.'s theory of things, but it has not been shown.
>
> He says this is a deliberate beating. You heard Sam House who is an expert. Sam says this is a panic crime. There was a crime probably of robbery intended, whatever. I still say the evidence indicates a struggle there. That's the only thing that makes sense on that and then things got out of hand and went panic.
>
> They want you to believe that he delivered a beating in the sense of a planned concentrated beating. It wasn't that way. It was panic when everything fell apart.

[R. Vol. VII Doc. 5-39, p. 1709–10.] Thus, in the context of the closing, the district court found that Strauss was not conceding that a robbery occurred.

Reviewing the record, the district court found that it was reasonable for Strauss to focus his time and energy on acquittal at trial and residual doubt in his closing argument. Strauss continuously emphasized the State's lack of physical evidence placing Terrell at the crime scene, and he built doubt in the jurors' minds during trial by pointing to Johnson as the lone gunman. At sentencing, Strauss presented testimony from Terrell's family members and friends that Terrell was respectful, nice, protective of his family, and a good father. Strauss emphasized that Terrell was overall a good person who did not deserve the death penalty. Noting that Strauss had passed away before the state habeas hearing, the district

22

court presumed that Strauss, an experienced trial attorney, "did what he should have done, and that he exercised reasonable professional judgment." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quoting *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999). Therefore, given the totality of the evidence, the district court concluded that the state supreme court reasonably applied *Strickland* in finding that Strauss rendered effective assistance in regard to this allegation.

3. Analysis

As the district court found, the state supreme court's adjudication of Terrell's claim of ineffectiveness of counsel was reasonable. First, Terrell cannot demonstrate by clear and convincing evidence that the state supreme court's factual findings were erroneous. The record provides powerful circumstantial evidence to support the jury's finding of the armed robbery aggravating factor: the State provided evidence (1) that supported a strong inference that Terrell was armed with a firearm on the day of the crime; (2) that the victim had cash because two days prior to the murder, he withdrew $150 from the bank; (3) that the victim normally carried cash in his left-front pocket, which was turned out when investigators arrived at the crime scene; (4) that Terrell would have known of Watson's propensity to carry cash in his left-front pocket because he had spent a significant amount of time with the victim; (5) that Terrell's mother testified that the day prior to the murders, she asked Terrell if he had the money to repay

23

Watson and he told her that he did not; (6) that a witness testified that later on the day of the murder, Terrell purchased clothes with cash; and (7) that a long-time friend testified that Terrell asked him to assist in the robbery and murder of Watson. Based on this record, Terrell cannot overcome the presumption of correctness with regard to the state supreme court's factual findings. *See Rose v. McNeil*, 634 F.3d 1224, 1241 (11th Cir. 2011) (stating that deference under AEDPA requires that a federal habeas court do more than simply disagree with the factual findings of the state court; "[i]nstead, it must conclude that the state court's findings lacked even fair support in the record").

Next, the state supreme court did not unreasonably apply *Strickland* to the facts in adjudicating Terrell's claim. Strauss did not perform deficiently. Contrary to Terrell's assertion, Strauss did not concede the armed robbery aggravating factor; rather, he paraphrased investigator Sam House's testimony to show the gaps in the State's case in order to create doubt in the minds of the jurors. The record demonstrates that Strauss continuously challenged the evidence presented by the State to show that an armed robbery occurred. On cross-examination, Strauss elicited from investigator Sam House that he could not say with certainty that Watson had money in his out-turned front pocket and that the pocket could have been disturbed when Watson retrieved his keys on his way to his car. Strauss also elicited from Graham on cross-examination that Graham waited eight years to tell

24

anyone about Terrell's offer to rob and murder Watson and that he initially refused to testify when he learned he would not get a deal on his sentence. Additionally, Strauss argued before the trial court that the armed robbery aggravator should not be submitted to the jury because the State's evidence was insufficient to show that an armed robbery had occurred.

In light of the State's theory that Terrell killed Watson out of anger because Terrell knew that if Watson pressed charges and had him arrested, Terrell would return to prison, Strauss reasonably challenged the State's lack of physical evidence to support its case. Strauss also reasonably employed a defense theory of residual doubt during the guilt and sentencing phases of the trial. Strauss highlighted all the gaps in the State's evidence, and he told the jurors that if they removed from their consideration the testimony of Johnson and Graham, two convicted felons with long rap sheets, "there is not a shred of evidence that connects [Terrell] clearly to the crime." [R. Vol. VII, Doc. 5-39, p. 1707.] Strauss exploited the unreliability of these two witnesses and continued to assert Terrell's innocence.

Furthermore, Strauss presented testimony from Terrell's family members and friends at the sentencing phase to support the defense theory that Terrell was not the kind of person who would murder an elderly, infirm person. A family pastor testified that Terrell had been active in church and had always been

25

respectful, and a prison pastor, who counseled Terrell several times a month, testified that Terrell had a good, positive attitude.  Friends testified that Terrell was a nice, caring, protective person, who respected his elders and was a good father. In all, Strauss presented ten people who testified that Terrell was a good person who did not deserve the death penalty.

Given the totality of the record, we conclude that the state supreme court reasonably determined that Strauss did not perform deficiently during the sentencing phase by focusing on the residual doubt theory instead of focusing solely on rebutting the State's evidence in support of the armed robbery aggravating factor.  Furthermore, we cannot say that even if Strauss performed deficiently in this regard, that his deficient performance caused Terrell prejudice. The jury found that the State had proven that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, and an aggravated battery to the victim before death.  This finding was sufficient for the jury to impose the death penalty.  Therefore, there is no reasonable probability that Strauss's failure to challenge the armed robbery aggravator would have changed the outcome of the sentencing.

Under AEDPA, however, we must evaluate not only whether there was a reasonable probability of a different result, but also, whether any reasonable jurist could decide otherwise.  If fairminded jurists could disagree about the correctness

26

of the state supreme court's decision that Terrell did not demonstrate that Strauss provided ineffective assistance of counsel, then the state supreme court's application of *Strickland* was reasonable.  Thus, AEDPA precludes us from granting federal habeas relief.  *See Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1326 (11th Cir. 2013) (en banc), *cert. denied*, ___ U.S. ___, 133 S. Ct. 2742 (2013).  Based upon our review of the record, we conclude that the state supreme court's factual findings were not clearly erroneous and were supported by the record, and that the state supreme court did not unreasonably apply *Strickland* to the facts of this case.  Accordingly, we affirm the district court's judgment denying Terrell habeas relief on this claim.

## V.  CONCLUSION

Under the rubric set forth in AEDPA, we conclude that the state supreme court's adjudication of Terrell's claims of ineffective assistance of counsel did not involve an unreasonable application of *Strickland* or depend on unreasonable findings of fact.  Thus, the district court correctly rejected Terrell's claims and denied his petition for habeas relief.  Accordingly, the judgment of the district court is affirmed.

**AFFIRMED**.

MARTIN, J., concurring:

Brian Keith Terrell was granted a Certificate of Appealability for his federal habeas appeal on two issues. I agree with the majority's conclusion that Mr. Terrell does not ultimately succeed on either of his two claims for relief. I write separately, however, to address the Georgia Supreme Court's analysis of Mr. Terrell's second claim, which I understand to misstate clearly established precedent from the United States Supreme Court. My purpose here is simply to properly articulate the Supreme Court rule in this circumstance in order to protect against dilution of jurisprudence on this subject.

## I.

In Mr. Terrell's second claim for relief, he argues that his attorney, John Strauss, provided ineffective assistance of counsel by failing to adequately challenge the statutory aggravating circumstance of armed robbery. In evaluating an ineffective assistance of counsel claim, we must examine both whether Mr. Terrell's counsel performed deficiently and if so, whether Mr. Terrell was prejudiced by that deficient performance. Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838, 842 (1993). If Mr. Terrell fails to show either that his counsel performed deficiently or that he was prejudiced by that deficient performance, his ineffective assistance of counsel claim fails. Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 2069 (1984).

Mr. Terrell was tried three times for the brutal murder of John Watson. Majority Op. at 4–5; see also Terrell v. State (Terrell II), 572 S.E.2d 595, 600 (Ga. 2002). For his first trial, in addition to the malice murder and felony murder charges, the State charged Mr. Terrell with one count of armed robbery. In that first trial, the jury was not able to reach unanimous agreement on either the armed robbery charge or murder charges. Majority Op. at 4; Terrell II, 572 S.E.2d at 600. When Mr. Terrell was tried for the second time, the State dropped the armed robbery count. But the State still relied on the armed robbery evidence when it asked the jury to find armed robbery as an aggravating circumstance during the penalty phase of the trial. Again, the second jury appeared to reject the state's theory on armed robbery, to the extent that it did not find armed robbery as an aggravating circumstance. See Terrell v. State, 523 S.E.2d 294, 295 (Ga. 1999) (Terrell I) (setting forth the two other aggravating circumstances found by the jury in the second trial).

Mr. Terrell's argument is that Mr. Strauss performed deficiently because he abandoned this successful strategy at the third trial by failing to adequately challenge the armed robbery aggravator. In Mr. Terrell's view, Mr. Strauss essentially conceded to the jury that an armed robbery had been committed. Again, this concession was in contrast to Mr. Strauss's approach at trials one and two. And based on this concession, Mr. Terrell argues that the jury at his third trial

29

arrived at a different conclusion than the juries from the first two trials, when it selected armed robbery as an aggravating factor to the murder charge.

The Georgia Supreme Court rejected Mr. Terrell's argument that his counsel conceded the armed robbery, and indeed affirmatively found that Mr. Terrell's counsel had made no such concession. Hall v. Terrell (Terell III), 679 S.E.2d 17, 21 (Ga. 2009). The Georgia Supreme Court interpreted counsel's statement as simply speculation as to why some other person might have been at the scene of the murder. Id. Now the majority on this panel has agreed with the Georgia Supreme Court's finding on this, adding that Mr. Terrell's counsel challenged the evidence of the armed robbery during cross-examination of the various witnesses. Majority Op. at 24–25.

If I were the fact-finder, I would come to a different conclusion about Mr. Strauss's argument than did the Georgia Supreme Court and my colleagues on this panel. At Mr. Terrell's first trial, Mr. Strauss vigorously argued to the jury, "Whatever happened out there, robbery was not part of it . . . It's not there." In the same way, Mr. Strauss cogently and persuasively argued at Mr. Terrell's second trial that the government's evidence of an armed robbery was "guess work." Then for some reason, not apparent from the record at Mr. Terrell's third trial, Mr. Strauss did not challenge the State's assertion of an armed robbery. Rather, Mr. Strauss acknowledged to the jury that "[t]here was a crime probably of robbery

30

intended, whatever." It is true that again in the third trial, Mr. Strauss made some attempts to shed doubt on the evidence of the robbery during cross-examination of the State's witnesses. But he did not build upon this cross-examination by dedicating a portion of his closing argument to explain why there was insufficient evidence of an armed robbery. Indeed, the only time that he mentioned the armed robbery was when he acknowledged to the jury that there had been a robbery. On this record, and if I were deciding this case de novo, I would find that Mr. Terrell's counsel conceded the armed robbery aggravator during his closing argument.

Also if I were deciding the issue in the first instance, I would find that Mr. Strauss was ineffective for abandoning the strategy which had twice been so successful for Mr. Terrell. Indeed, I would agree with Mr. Terrell that when his counsel conceded the robbery, his performance was constitutionally deficient. I am simply hard pressed to understand why Mr. Strauss felt that it was necessary or beneficial to abandon a strategy that had been successful in not one but both of Mr. Terrell's earlier trials. It is true that Mr. Strauss's strategy at the penalty phase was to emphasize residual doubt regarding Mr. Terrell's guilt. But I see no reason why this strategy required a concession on the armed robbery. Indeed, Mr. Strauss effectively argued at the second trial that there had been no armed robbery and that Mr. Terrell was not involved in the murder. Based upon these specifics of this

31

record, and if I were reviewing this case de novo, I would find that counsel's performance at Mr. Terrell's third trial was deficient.

However, I am not deciding this case in the first instance. My statutory role permits me only to review the findings of the highest court of the State of Georgia for reasonableness. Because I cannot conclude that the Georgia Supreme Court's factual finding on this was "an unreasonable determination of the facts," see 28 U.S.C. § 2254(d)(2), I must concur with the majority of my panel members that Mr. Terrell has failed to establish that his attorney was deficient.

## II.

My deeper concern arises from the Georgia Supreme Court's analysis of the prejudice prong of Mr. Terrell's Strickland claim. The Georgia high court made its prejudice determination by asking whether there was a "reasonable probability" that the jury would have changed its finding about "the existence of an armed robbery," even if Mr. Strauss had advocated at the third trial on the issue of the armed robbery in the same way he had at the first two trials. Terrell III, 679 S.E.2d at 21 (emphasis added). Said another way, the Georgia Supreme Court's inquiry was whether Mr. Terrell's eligibility for the death penalty was affected by his counsel's performance. But this is not the proper inquiry required under clearly established Supreme Court precedent.

32

In reviewing a record for prejudice during the sentencing phase of a capital trial, we are required to reweigh all of the evidence, new and old, good and bad, and determine as best we can, the probability of a different outcome.  See Porter v. McCollum, 558 U.S. 30, 41, 130 S. Ct. 447, 453–54 (2009) (per curiam) ("To assess that probability, we consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding and reweig[h] it against the evidence in aggravation." (quotation marks omitted)); see also Sears v. Upton, ___ U.S. ___, ___, 130 S. Ct. 3259, 3266–67 (2010) (per curiam); Wong v. Belmontes, 558 U.S. 15, 26, 130 S. Ct. 383, 390 (2009) (per curiam).  As a result, the Georgia Supreme Court should have inquired into how counsel's concession of the armed robbery affected the jury's decision to sentence Mr. Terrell to death—not whether the jury would have, or could have, found the armed robbery aggravating factor in any event.  Again, I make this point because of the importance of applying the proper standard in these cases going forward.

I have agreed with the majority of this panel that, based upon the findings of the Georgia Supreme Court, Mr. Terrell cannot establish deficient performance by his counsel at his third trial.  No finding about prejudice is therefore necessary.  On this record, I concur with the majority's decision affirming the District Court's denial of habeas relief to Mr. Terrell.