[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13282
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00539-BJD-JRK

MICHAEL L. FLOWERS,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 29, 2021)

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Michael L. Flowers appeals the district court's order denying his 28 U.S.C. section 2254 petition for writ of habeas corpus. We granted a certificate of appealability on the following issue: "[w]hether trial counsel was ineffective for not objecting during closing argument to the state's comments regarding his post-arrest silence and invocation of the right to counsel after giving vague statements to police about staying with his girlfriend during the offense." After a thorough review of the briefs and the record, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2004, James Johnson and Jerry Strickland spotted James Baker while they were driving around a neighborhood to sell drugs. Johnson and Strickland got out of their car and started fighting Baker. Baker fought back and "scream[ed] out for Fly." Johnson and Strickland knocked Baker down and kicked him before running back to their car. Then a van pulled up alongside their car. Michael Flowers, who everyone knew as Fly, was in the back seat of the van holding a gun. Flowers shot into the car, hitting both Strickland and Johnson. Johnson was paralyzed from the gun shots.

After the shooting, Strickland told the investigating law enforcement officers that Flowers was the shooter. The next day, Strickland identified Flowers again

2

using a photospread.  Johnson also identified Flowers as the shooter two days after the shooting.

Law enforcement officers arrested Flowers eleven days later and advised him of his Miranda[1] rights.  Flowers signed the form indicating that he understood his rights.  Two detectives began the interview by telling Flowers that he was a suspect in the February shooting.  Flowers told the detectives that "he was aware of the incident but he was not there" and that "he was at his girlfriend's house when the incident occurred."  He said he knew about the shooting "because he had received a phone call and was told two guys jumped on another guy."  Flowers then repeated that he had been with his girlfriend at the time and told the detectives that if they had any other questions, they "would have to ask his attorney."

Several months later, Flowers was interviewed a second time and again advised of his Miranda rights.  In this second interview, Flowers told the officers he was with his girlfriend, Shantell Smith, at the time of the shooting.

Flowers was charged with two counts of aggravated battery.  He was tried in December 2005.  At trial, both victims identified Flowers as the shooter.  Officer Robert Monroe, the primary investigating officer on the case, gave some general testimony about the investigation into the shooting.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

During Office Monroe's cross examination, Flowers requested that he read aloud a portion of the report about Flowers's first interview. Officer Monroe read:

> [Flowers] was provided his constitutional rights by form and signed the form. [Flowers] advised detectives he understood his rights. . . .
>
> [Flowers] advised he was at his girlfriend's house when the incident occurred. . . .
>
> [Flowers] told the detective if he had any other questions for him we would have to ask his attorney.

Flowers raised an alibi defense at trial. His girlfriend, Shantell Smith, testified that Flowers had been with her and their three-year-old daughter the entire evening, including at the time of the shooting. She said that they were on the other side of town in her home, watching movies, and that she remembered him getting a phone call. She also testified that she had been present when Flowers was arrested, visited him in jail weekly, and spoke to him almost every day.

During his closing argument, Flowers used the first interview to corroborate the alibi defense. Flowers told the jury that even at the first interview he told the interviewing officers "that he was with his girlfriend. And then he asked for an attorney and all questioning stopped." Flowers then said that "after he asked for his attorney certainly" officers could not ask more questions.

The state replied to the alibi argument, explaining in its rebuttal that although Flowers told the interviewing officers that he was with his girlfriend at the first

4

interview, he did not give them any of the supporting details that he shared with them months later during the second interview:

> [Flowers] was provided his constitutional rights, he understood them, he acknowledged them, and agreed to talk to [the police] for a certain period of time. In fact, this is defense evidence piece number one.
>
> What's so important about this conversation is that it's got to be a case of mistaken identity. [Flowers] claims to have been at his girlfriend's house, okay, that's what he says, claims to have been at his girlfriend's house. Not [Shantell] Smith's house, not my girlfriend's house on Harts Road which would have just been as very easy to say, just my girlfriend's house at this point and time. And oh, by the way, if you want to ask me any more questions talk to my lawyer.
>
> Now got [sic] to ask yourself why wouldn't he just flat out say right then and there instead of girlfriend, why not say [Shantell] Smith? I submit to you the reason is because at that point and time he hadn't had the opportunity to talk to Miss Smith about this, to set up this alibi, hadn't had the chance. Figures, man, give up [Shantell] Smith now, by the time I can have an opportunity to reach out to her, man, there's a chance police would already talk to her. My cover would be blown. Can't do that. So he gives them girlfriend. That's why, how easy would it have been just to say [Shantell] Smith, if that in fact is where he was the night of the shooting?

The jury found him guilty of both charges. Flowers was sentenced to life imprisonment for shooting Johnson and twenty years for shooting Strickland. The state appellate court affirmed the convictions and sentences.

On September 9, 2013, Flowers filed an amended motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. He argued that his trial counsel was ineffective "for failing to object to the [state's] excessive comments on [Flowers's] post-arrest silence and the invocation of his right to counsel." The state

5

responded, saying that although it once—and only once—mentioned Flowers's invocation of his right to counsel during the rebuttal closing argument, the state did not use it as substantive evidence of guilt.  The state, instead, discussed Flowers's first interview as a whole, including how he said he knew about the shooting.  The state argued that its rebuttal closing focused on what Flowers did say, rather than his silence and invocation of counsel, by pointing out the vagueness of the statements that Flowers made during the first interview "so that he would have time to get with Ms. Smith later and set up the alibi."

The state habeas court denied Flowers's motion and incorporated the state's response in its decision.  The state habeas court found:

> [A]s to each ground defendant raised in support of his motion, the record conclusively demonstrates that defendant did not receive ineffective assistance of counsel and that defendant did not suffer prejudice resulting from the actions of his trial counsel that were alleged by defendant to be ineffective.  When viewed in the context of the entire trial transcript, each of the allegedly deficient acts by trial counsel appears reasonably calculated to advance a legitimate interest of Defendant or not to have resulted in any prejudice to Defendant.

The state appellate court affirmed without an opinion.

Flowers filed a timely petition for habeas corpus under 28 U.S.C. section 2254.  He alleged that his trial counsel was ineffective for not objecting to the state's discussion of his invocation of his right to counsel and silence during its rebuttal closing argument.  The district court denied the petition because "the Florida court's decision [was] not inconsistent with Supreme Court precedent, including Strickland

6

and its progeny." The district court agreed with the state habeas court's finding that "the [state] did not use the invocation of right to counsel as substantive evidence of guilt." In the rebuttal closing argument, the district court held, the state focused on the lack of specificity and credibility in the first interview with law enforcement. The failure to object was not deficient, the district court explained, "because the [state's] comments were not improper." The district court also concluded that there was no prejudice because "any failure on defense counsel's part to object to the state's closing argument did not contribute significantly to the verdict," particularly in light of the "substantial and very strong testimonial evidence presented at trial against [Flowers]."

**STANDARD OF REVIEW**

Flowers's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996. See Mendoza v. Sec'y, Fla. Dep't of Corr., 761 F.3d 1213, 1234 (11th Cir. 2014). Because "state courts are adequate forums for the vindication of federal rights," the Act "ensure[s] that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice system[], and not as a means of error correction." Id. (citations omitted).

The Act allows a federal court to grant habeas relief only where the state habeas court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

7

of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "An unreasonable application of clearly established federal law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case." Terrell v. GDCP Warden, 744 F.3d 1255, 1261 (11th Cir. 2014) (internal quotation marks omitted) (alterations adopted). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000). "[T]he ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (internal quotations omitted). "Therefore, we must deny federal habeas relief as long as some fairminded jurists could agree with the state court's decision, although others might disagree." Terrell, 744 F.3d at 1261 (internal quotation marks omitted).

Where a convicted defendant claims ineffective assistance of counsel, the relevant clearly established federal law is Strickland. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Under Strickland's two prong test, the defendant must show both that: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). This is an "onerous" burden on the defendant. Terrell, 744 F.3d at 1261. A conviction will be reversed only where

8

there has been "so serious" an error by counsel that it resulted in "a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mendoza, 761 F.3d at 1236. "[T]he likelihood of a different result must be substantial, not just conceivable." Id. A showing that the "errors had some conceivable effect on the outcome of the proceeding" is "not enough." Harrington v. Richter, 562 U.S. 86, 105 (2011) (emphasis added). In other words, a defendant must "affirmatively prove" that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 693. In evaluating whether the defendant was prejudiced by counsel's errors, we consider the "governing legal standard" and the "totality of the evidence." Id. at 695–96.

"Where the highly deferential standards mandated by Strickland and [the Act] both apply, they combine to produce a doubly deferential form of review that asks only whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Terrell, 744 F.3d at 1262. (quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Mendoza, 761 F.3d at 1236

(quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  "If there is any reasonable argument that counsel satisfied Strickland's deferential standard, then a federal court may not disturb a state court decision denying the claim."  Id. (quoting Richter, 562 U.S. at 105) (internal quotation marks omitted).

## DISCUSSION

The state habeas court found that Flowers "did not receive ineffective assistance of counsel" and he was not prejudiced by his trial counsel's failure to object to the state's comment in the rebuttal closing argument about Flowers's invocation of his right to counsel.  Flowers argues that the district court erred in concluding that the state habeas court didn't unreasonably apply Strickland and that no reasonable jurist could find as the state habeas court did.  We disagree and conclude, as the district court did, that the state habeas court did not unreasonably apply Strickland's prejudice prong to trial counsel's non-objection to the state's comment about Flowers invoking his right to counsel during the rebuttal closing argument.[2]

First, the state habeas court's prejudice finding was not an unreasonable application of Strickland because the state only referenced Flowers's invocation of

---

[2] Because we conclude, as the district court did, that the state habeas court did not unreasonably apply Strickland's prejudice prong, we do not have to reach the issue whether the state habeas court unreasonably applied Strickland's performance prong.  Strickland, 466 U.S. at 697.

10

his right to counsel once in the rebuttal closing argument and the comment was isolated, brief, and in passing.  See United States v. Beasley, 72 F.3d 1518, 1528 (11th Cir. 1996) (in the context of a direct appeal, "[e]ven in the instances of improper comments," if "[t]he comments were isolated, not emphasized, and, in the context of the lengthy trial, [they] could not have been prejudicial")  The state did not emphasize, linger on, or repeat that Flowers invoked his right to counsel.  The state focused on Flowers's wording to rebut and highlight the lack of specificity in his alibi statement, and did not suggest that Flowers's invocation of the right to counsel was itself evidence of his guilt.

And second, the state habeas court's prejudice finding was not unreasonable because the fact that Flowers invoked his right to counsel was already in evidence before the jury—introduced by Flowers—before the state's rebuttal closing argument.  To establish Flowers's alibi defense, his trial counsel asked Officer Monroe to read aloud to the jury the report about the first interview, which included that Flowers had invoked his right to counsel.  And then, in closing, his trial counsel discussed Flowers's invocation of his right to counsel and silence before the state did.  The fact that Flowers invoked his right to counsel was known to the jury when the state made the argument during the rebuttal closing argument, since it was part of Flowers's alibi defense.

Because Flowers has failed to show that the state habeas court unreasonably applied Strickland, the district court order denying his section 2254 petition must be **AFFIRMED.**